UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL H. PONDER,<br><br>                        Plaintiff(s),<br><br>     v.<br><br>DR. HANS-PETER WILD,<br><br>                        Defendant(s). | Case No. 2:16-CV-2305 JCM (PAL)<br><br>ORDER |

Presently before the court is defendant Dr. Hans-Peter Wild's ("Wild") motion to dismiss (ECF No. 9) plaintiff Michael Ponder's ("Ponder") complaint (ECF No. 1) for a lack of personal jurisdiction. Ponder filed a response (ECF No. 11), to which Wild replied (ECF No. 14).

**I.     Background**

This action arises out of an alleged oral agreement between Wild and Ponder. Wild, a resident of Switzerland, was the owner of various corporations, including Wild Flavors, Inc. ("WFI"), Wild Affiliated Holdings, Inc. ("WAH"), and WILD Flavors GmbH (the "company"). (ECF No. 1 at 2).

In June 1998, Ponder, a Nevada resident, joined WFI as the president and CEO, and reported directly to Wild. (*Id.*). In August 2005, WFI became a subsidiary of WAH, and Ponder became president and CEO of WAH. (Id.). In 2010, Ponder became CEO of the company, which is headquartered in Switzerland. (*Id.*).

Allegedly, during a dinner at Wild's house in Zug, Switzerland, Wild told Ponder that Ponder "needs to lead the effort to complete the sale of the [c]ompany, which included WFI and WAH." (*Id.* at 3). Ponder maintains that in return for his participation in the sale of the

**James C. Mahan**
**U.S. District Judge**

company, Wild promised "an additional $3 million over and above whatever compensation the management team received from the sale." (*Id.*).

Ponder claims that he led all of the management meetings, presentations, discussions with potential buyers, and was available for travel during the sale process. (*Id.* at 4). Based on Ponder's alleged performance, he had grown WFI "to more than $300 million in revenue and had an operating profit of more than 30%." (*Id.* at 6). Ponder argues that at the time of the sale of the company in 2014, WFI was the company's "crown jewel," allowing him to demand the significant premium for the business that Wild required. (*Id.*).

In October 2014, after the sale of the company, Ponder allegedly asked Wild who he should send the wiring instructions to for his $3 million payment. (*Id.*). Ponder maintains that Wild responded by claiming that the management payment after the sale was enough and that Wild was not going to pay Ponder the allegedly agreed-upon $3 million sum. (*Id.*).

Ponder claims that in April 2016, Wild stated he would pay Ponder $25,000 to handle a matter with the German government. (*Id.* at 7). Wild allegedly only paid Ponder $10,000 because, as Wild stated, $10,000 was "enough." (*Id.*).

Ponder also claims to have provided bodyguard services to Wild for which he was never paid—estimated at $100,000 per year. (*Id.* at 8). Ponder maintains that when he began requesting payment for his various services, Wild began "engaging in defamation of [Ponder]'s character and work ethic." (*Id.*).

This alleged defamation consisted of sending correspondence to "third-parties, including, but not limited to, [Ponder]'s former employer" that consisted of false statements in an effort to "discredit" and "tarnish" Ponder's reputation. (*Id.*).

Ponder also claims to have been removed as "director of a company" because he refused to join Wild's plan to cover up an attack of a female colleague. (*Id.* at 9). Wild allegedly never compensated Ponder for his services as director of this company, estimated at $250,000 per year. (*Id.*).

On October 1, 2016, Ponder filed the underlying complaint alleging (1) breach of oral contract, (2) breach of implied covenant of good faith and fair dealing, (3) unjust enrichment, (4)

fraudulent or intentional misrepresentation, (5) conversion, (6) defamation, and (7) punitive damages. (ECF No. 1).

In the instant motion, Wild argues that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(2) because the court lacks personal jurisdiction. (ECF No. 9).

## II.   Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). To avoid dismissal under Rule 12(b)(2), a plaintiff bears the burden of demonstrating that its allegations establish a prima facie case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Allegations in the complaint must be taken as true and factual disputes should be construed in the plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015; *see also Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Where a state has a "long-arm" statute providing its courts jurisdiction to the fullest extent permitted by the due process clause, as Nevada does, a court need only address federal due process standards. *See Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065); *see also Boschetto*, 539 F.3d at 1015.

An assertion of personal jurisdiction must comport with due process. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Two categories of personal jurisdiction exist: (1) general jurisdiction; and (2) specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

General jurisdiction arises where a defendant has continuous and systematic ties with the forum, even if those ties are unrelated to the litigation. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414–16). "[T]he plaintiff must demonstrate the defendant has sufficient contacts to constitute the kind of continuous and systematic general business contacts that approximate physical presence." *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1131 (D. Nev. 2009)

(internal quotation marks and citations omitted). In other words, defendant's affiliations with the forum state must be so "continuous and systematic" as to render it essentially "at home" in that forum. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760–61 (2014).

Specific jurisdiction arises where sufficient contacts with the forum state exist such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id*. (citations omitted).

### III. Discussion

As an initial matter, no general jurisdiction exists over Wild in Nevada because he is a citizen of Switzerland and is not "at home" in Nevada. *See Daimler*, 134 S. Ct. at 760–61 (describing the general jurisdiction analysis for individuals). Ponder argues that Wild is "at home" in Nevada because of his semi-frequent travels, membership to a golf club, and business dealings with the Nevada incorporated WAH. (ECF No. 11 at 7–9). However, Wild's sporadic visits and his membership in a golf club are neither systematic nor continuous enough to establish him "at home" in Nevada. *See Tuazon*, 433 F.3d at 1171 (requiring systematic and continuous ties with the forum for general personal jurisdiction to exist).

That WAH is incorporated in Nevada is similarly insignificant. Ponder argues that because WAH was incorporated in Nevada and because Wild "routinely conducted business for the company in Las Vegas," that general jurisdiction exists. (ECF No. 11 at 8). Wild conducting

business in Nevada on behalf of WAH does not establish him as "at home." *See Daimler*, 134 S. Ct. at 761.

Accordingly, to withstand dismissal under rule 12(b)(2), Ponder must demonstrate that his allegations establish a prima facie case for specific jurisdiction. *See Boschetto*, 539 F.3d at 1015. In other words, Ponder must satisfy the first two prongs of the test for specific jurisdiction. *See Schwarzenegger*, 374 F.3d at 802.

Ponder argues that specific personal jurisdiction is appropriate for various reasons: (1) Wild incorporated WAH in Nevada; (2) the alleged contract involved compensation related to the sale of WAH; (3) Wild would conduct company business in Las Vegas; (4) Wild "routinely conducted" management meetings in Las Vegas; and (5) Wild attended industry-related trade shows in Las Vegas. (ECF No. 11 at 9).

Specifically, Ponder maintains that this court has personal jurisdiction over his tort-based claims because they arise from the alleged contract which was made "in connection with the sale of [Wild]'s Nevada corporation." (*Id.* at 11). The court disagrees. Ponder's attempt to emphasize that the alleged contract was for the sale of WAH rather than—as stated in the operative complaint—for the sale of WILD Flavors GmbH, does little to support his position that Wild expressly aimed his conduct at Nevada, causing him harm that would likely be suffered in Nevada. *See Schwarzenegger*, 374 F.3d at 803; (ECF No. 1 at 3) ("Wild personally told [Ponder] that [Ponder] needs to lead the effort to complete the sale of the Company, which included WFI and WAH . . . ."). Indeed, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014).

Here, the tort claims of fraudulent misrepresentation and conversion deal directly with the alleged oral contract.[1] (ECF No. 1). The alleged agreement, which took place in Switzerland, was for the sale of WILD Flavors GmbH, a Swiss company, and in no way directly targeted Nevada.

---

[1] Notably, it is possible that plaintiff intended the conversion claim to encompass the lost wages as well. (ECF No. 1 at 13–14). Even if this were true, Wild's conduct in his alleged conversion presumably took place in Switzerland. Plaintiff's filed papers are unclear on many details regarding the necessary specifics to establish personal jurisdiction.

(*Id.* at 3). That Ponder is a Nevada resident and was injured is irrelevant to the appropriate personal jurisdiction analysis. *See Walden*, 134 S. Ct. at 1125.

The final tort claim of defamation conceivably passes this effects test. However, it is insufficiently pleaded; the court is unable to properly evaluate it. In his complaint, Ponder claims that "Wild has been sending correspondence to third-parties, including, but not limited to, Plaintiff's former employer, containing false and defamatory statements . . . ." (ECF No. 1 at 8). Noticeably absent from this allegation are the specifics required to determine the appropriateness of personal jurisdiction. *See Walden*, 134 S. Ct. at 1125 (requiring analysis of the specific conduct and its meaningful connection to the forum). The relevant allegation is entirely lacking specific names. *See* (ECF No. 1 at 8). The court cannot assess if Wild's actions targeted Nevada because it does not know who these "third-parties" are or who Ponder's "former employer" is.

Ultimately, even if Wild's action of incorporating a business in Nevada and his participation in business meetings and trade shows were sufficient to establish the first prong of purposefully directing his activities to the state of Nevada, he certainly fails the second prong of the test, requiring those actions give rise to the claims. *See Schwarzenegger*, 374 F.3d at 802. The claims at hand, with the exception of defamation, revolve around the alleged oral contract. *See* (ECF No. 11 at 11) ("[Ponder]'s allegations relate to the personal, separate contract [Wild] entered into with [Ponder] . . . ."). Neither incorporating WAH in Nevada nor participating in business meetings and trade shows in Nevada directly relate to the alleged agreement or any of the events leading to these claims.

In light of the foregoing, the court finds that Ponder has failed to establish a prima facie case of personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 802. As Ponder has failed to satisfy the first and second prong of the specific jurisdiction test, personal jurisdiction is not established in Nevada. *See id*. Accordingly, the court will grant Wild's motion to dismiss for lack of personal jurisdiction.

. . .

. . .

. . .

**James C. Mahan
U.S. District Judge**

- 6 -

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to dismiss for lack of jurisdiction (ECF No. 9) be, and the same hereby is, GRANTED without prejudice.

DATED April 26, 2017.

_____
UNITED STATES DISTRICT JUDGE